FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT

★ JAN 10 2011

TIME A.M. P.M.

C/M

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X

TARIQ SHAHEED,

                                  Petitioner,

               - against -

D. MARTUSCELLO, Superintendent,

                                  Respondent.

------------------------------------------------------------- X

**MEMORANDUM
DECISION AND ORDER**

10 Civ. 3288 (BMC)

**COGAN**, District Judge.

Petitioner brings this proceeding under 28 U.S.C. § 2254 seeking review of his state court convictions for illegal weapons possession, reckless endangerment, resisting arrest, and drug possession, for which he was sentenced to fourteen years on the weapons count and lesser concurrent time on the other counts. The charges arose out of petitioner's firing of multiple shots at a home; the police apprehended him shortly after the shooting following a high speed car chase ending in a crash, together with the gun and ammunition which matched that used in the shooting.

Petitioner raises three points of error in his timely petition, all of which are exhausted: (1) the trial court improperly sustained the prosecutor's reverse-<u>Batson</u> objection, so that two of the six Asian-American jurors against whom petitioner attempted to exercise peremptory challenges were seated; (2) the trial court improperly rejected a missing witness instruction; and (3) the trial court improperly sustained an objection to a police officer testifying on cross-examination as to an arguably exculpatory statement that petitioner made at the time of his arrest.

Familiarity with the facts is assumed, although some additional facts will be set forth as necessary to address petitioner's arguments. For the reasons set forth below, none of these claims have merit and the petition is therefore denied.

## DISCUSSION

**1. Reverse <u>Batson</u> Challenge**

Petitioner exercised peremptory strikes against each of the six Asian-Americans that appeared in his venire. The trial court denied the prosecutor's objection under <u>Batson v. Kentucky</u>, 476 U.S. 79, 106 S. Ct. 1712 (1986), after the third strike, finding no *prima facie* case of discrimination, as well as another objection after the fourth strike, finding that the prosecutor had demonstrated a *prima facie* case but that petitioner had offered non-pretextual reasons for objecting to the Asian-American venire persons. However, the trial court sustained additional objections as to the fifth and sixth strikes after petitioner's trial counsel claimed that the decisions to strike were "strategic" because petitioner wanted to seat specific other members of the venire (non-Asian-Americans) to whom she had not even spoken, and her other reasons were inconsistent with her decision not to strike other non-Asian-American jurors.

There is no right to exercise peremptory challenges under the Constitution. <u>Rivera v. Illinois</u>, --- U.S. ----, 129 S. Ct. 1446, 1450 (2009). Habeas relief will only lie if the result of disallowing a defendant's peremptory challenges is that the jury is not impartial, and if that is the case, the <u>Batson</u> issue is largely immaterial because a petitioner always has a right to an impartial jury. <u>Id.</u> at 1454. In light of <u>Rivera</u>, petitioner cannot show that the state court's decision was

2

contrary to or an unreasonable application of Supreme Court precedent. See 28 U.S.C. §2254(d); Williams v. Taylor, 529 U.S. 362, 412-13, 120 S. Ct. 1495 (2000).[1]

In addition, there was nothing wrong with the trial court's application of the Batson procedure. It followed the three-step procedure according to Batson. Relief here would be particularly inappropriate given the deference this Court must give to the trial court's findings of fact. Even in the context of a Batson as opposed to a reverse-Batson challenge, the determination at step three is a finding of fact that is accorded "great deference" and reviewed for clear error on direct appeal; "the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed." Hernandez v. New York, 500 U.S. 352, 364-65, 111 S. Ct. 1859 (1991). This deference "stems from the fact that the best evidence of the credibility *vel non* of a race-neutral explanation will often . . . be the demeanor of the attorney who exercises the challenge, and such evaluations of demeanor lie [ ] peculiarly within a trial judge's province." Messiah v. Duncan, 435 F.3d 186, 196 (2d Cir. 2006) (internal citations and quotation marks omitted). On collateral review of a Batson challenge, to grant relief based on a state court's determination at step three, "a federal habeas court must find the state-court conclusion [to be] 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Rice v. Collins, 546 U.S. 333, 338, 126 S. Ct. 969 (2006) (quoting 28 U.S.C. § 2254(d)(2)). In addition, under 28 U.S.C. § 2254(e)(1), the determination

---

[1] This Court is mindful of the New York Court of Appeals' recent decision in People v. Hecker, -- N.E.2d --, 2010 N.Y. Slip. Op. 08766, 2010 WL 4823391, *1 (N.Y. Nov. 30, 2010), in which the court confirmed that the erroneous denial of a preemptory challenge is reversible error *per se*, under New York law. However, Hecker was issued in the wake of Rivera as a means to clarify New York state law and does not change the fact that no such right exists as a matter of federal law. See Rivera, 129 S. Ct. at 1456 ("[a]bsent a federal constitutional violation ... States are free to decide, *as a matter of state law,* that a trial court's mistaken denial of a peremptory challenge is reversible error per se") (emphasis added)).

is "presumed to be correct," and a defendant has "the burden of rebutting the presumption of correctness by clear and convincing evidence." Id. at 338-39.

Petitioner's habeas point is based on re-arguing his counsel's effort to persuade the trial court that the strikes were not pretextual. There was more than a rational basis for the trial court's decision to reject that argument. Petitioner's trial counsel struck Asian-Americans who she had not even asked any questions, allegedly to seat two non-Asian Americans in the venire who she knew nothing about and might not have been seated in any event. She attempted to justify this based on relationships the Asian-Americans had with police officers that were more distant than relationships of other non-Asian-American jurors who she did not strike. Even if habeas relief for granting a reverse-Batson challenge was available, petitioner would not be entitled to it.

## 2. Missing Witness Instruction

The people in the house at the time the shots were fired included Yvonne Boxhill (the owner of the house) and two of her relatives, Tyrone Branch and Tyrone Jones (the "Tyrones"). The prosecution called only Boxhill. She did not see the shooting, but observed the car that became the subject of the high speed police chase from her bedroom window after the shots were fired; she then ran to the porch and saw the vehicle again, and observed a person driving who she could not see well enough to identify, driving away.[2] She also testified that when she got to her porch, the Tyrones had already gotten there. At the conclusion of the prosecution's case, defense counsel alerted the court that she intended to request a missing witness instruction because the

---

[2] The car was distinctive -- a gray Dodge Charger with out of state license plates.

4

prosecution had not called either of the two Tyrones. Counsel's theory was that since the Tyrones had already arrived at the porch when Boxhill got there, they may have seen more.

"A missing witness charge invites the jury to draw an adverse inference against a party that fails to call a witness whose 'production ... is peculiarly within [its] power.'" United States v. Gaskin, 364 F.3d 438, 463 (2d Cir. 2004) (quoting United States v. Mittelstaedt, 31 F.3d 1208, 1216 (2d Cir. 1994)). The Second Circuit has explained that, "[b]ecause we recognize that 'an aura of gamesmanship' frequently accompanies requests for missing witness charges, we afford [trial] judges considerable discretion in deciding when they should and should not be given." Gaskin, 364 F.3d at 463 (citations omitted). In addition, "[l]ike the failure to give any other jury instruction, the failure to issue a missing witness instruction does not raise a constitutional issue and cannot serve as the basis for federal habeas relief unless the failure 'so infected the entire trial that the resulting conviction violated due process.'" Klosin v. Conway, 501 F. Supp. 2d 429, 444 (W.D.N.Y. 2007) (quoting Cupp v. Naughten, 414 U.S. 141, 147, 94 S. Ct. 396 (1973)).

I see no error at all in the trial court's exercise of its discretion to decline to give a missing witness charge, let alone an error of constitutional magnitude or a disregard of Supreme Court authority by the Appellate Division. A fundamental requirement for a missing witness charge under New York law is that the missing witness would be expected to give testimony favorable to the defendant. See e.g., People v. Gonzalez, 68 N.Y.2d 424, 427-28, 509 N.Y.S.2d 796 (1986). Here, the defense attorney's favorability argument was premised on the assumption that since the Tyrones had already reached the porch when Boxhill arrived, they must have seen more, and the prosecution therefore tactically chose not to call them because they would have identified a shooter other than petitioner. But that argument was rank speculation, especially since Boxhill gave a very specific identification of the car; the police shortly thereafter

apprehended that car with petitioner in it after a high speed chase; and petitioner had ammunition matching that used in the shooting and was observed by the police throwing the weapon used in the shooting from the car during the chase. See Toland v. Walsh, No. 9:04-CV-0773 (GLS), 2008 WL 65583, at *14-15 (N.D.N.Y. Jan. 4, 2008) (habeas relief was unavailable where request for missing witness instruction was "based upon nothing other than mere conjecture;" court noted that "federal habeas relief cannot be granted upon claims that are rooted in speculation").

In addition, there was no evidence that the Tyrones had arrived on the porch more than an instant before Boxhill. Rather, the evidence showed that lots of people in the neighborhood had come running out to see what was happening after the shots were fired; there was no reason to think that this did not include the Tyrones. Viewing the totality of the evidence, the trial court acted well within its discretion, and could have reasonably concluded that it was defense counsel's request for a missing witness instruction, not the prosecution's failure to call the Tyrones, that constituted an attempt at tactical manipulation. See Brown v. Spitzer, No. 05 Civ. 1553 (BMC), 2007 WL 2406870, *3 (E.D.N.Y. Aug. 21, 2007) ("[T]he failure to give a missing witness charge will rarely support reversal or habeas relief since reviewing courts recognize the aura of gamesmanship that frequently accompanies requests for a missing witness charge as to which the trial judge will have a surer sense than any reviewing court.") (citation and quotation marks omitted).[3]

In any event, even if New York law would have required a missing witness instruction, the Constitution and the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") did

---

[3] There was other evidence of gamesmanship by defense counsel in making this request. The record shows that she knew, but the prosecution did not, that Tyrone Jones was in state custody during the trial, yet she waited until just before the close of the prosecution's case to alert the Court of her "missing witness" claim, making it difficult if not impossible for the prosecution to produce Jones to testify at trial the next day. For this and other reasons apparent from the record, the inference is hard to avoid that what trial counsel really wanted was the missing witness instruction, not the purported missing witnesses.

not. See, e.g., Davis v. Smith, No. 9:06-CV-1389 (JKS), 2009 WL 236506, at *7 (N.D.N.Y. Feb. 2, 2009) ("Even if state law had called for the missing witness charge, its absence certainly did not so infect the entire trial as to deny Petitioner due process where, as here, the prosecutor's comments during his opening statement were equivocal, defense counsel was permitted to comment on the absence of any eye-witness testimony during summation, and the jury was instructed to limit itself to the evidence actually presented."). "Where, as here, the alleged error is one of omission, it 'is less likely to be prejudicial than a misstatement of the law,' thereby making the petitioner's 'burden ... especially heavy.'" Crews v. Herbert, 586 F. Supp. 2d 108, 114 (W.D.N.Y. 2008) (quoting Henderson v. Kibbe, 431 U.S. 145, 155, 97 S. Ct. 1730 (1977)). There is no Supreme Court authority requiring the giving of missing witness instruction. Given the totality of the evidence, the absence of a missing witness instruction did not in any way undermine the fundamental fairness of petitioner's trial.[4]

---

[4] Defense counsel did not attempt to argue during closing that the jury should consider the prosecution's failure to call either of the Tyrones. She did argue that such an inference could be drawn from the failure to call another family member, Tracy Branch, and objections were sustained to that argument, but petitioner did not argue on appeal that a missing witness charge should have been given with respect to Tracy or that the trial court erred in sustaining the prosecution's objections to her references to the failure to call Tracy.

3.  **Limiting of Cross-Examination**

During the direct examination of the arresting officer, the following exchange occurred:

```
 6          Q.   Now, when you instructed the defendant to step
 7     out of the vehicle what did he do or say?
 8          A.   When we first approached he just sat there and
 9     stared at us.  He didn't move.  He just looked at us.  And
10     when we finally did open the door and asked him to get out
11     he made a statement.
12          Q.   Okay. Beyond that did the defendant get out of
13     the car at that time?
14          A.   No.  We had to pull him out of the car.
```

The "statement" petitioner made, which the jury never heard, was "you got it all wrong" and "they tried to rob me." Defense counsel tried to elicit this statement on cross-examination, arguing that the prosecution had opened the door by eliciting that petitioner had made a statement, and that not allowing the statement into evidence would leave the misleading impression that the statement was inculpatory. The trial court sustained the prosecution's objection on the ground that the statement was hearsay and self-serving.

The Constitution "guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Fensterer, 474 U.S. 15, 20, 106 S. Ct. 292 (1985) (emphasis in original). "[T]rial judges retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall,

8

475 U.S. 673, 679, 106 S. Ct. 1431 (1986); see also Howard v. Walker, 406 F.3d 114, 129 (2d Cir. 2005) ("Limitations on cross-examination may be lawful and legitimate if they are harmonious with the goal of ensuring the legitimacy of the truthfinding process.").

The first question that needs to be determined on habeas review is whether a state evidentiary rule was in fact violated. See Wade v. Mantello, 333 F.3d 51, 59 n.7 (2d Cir. 2003). New York law is well-settled that exculpatory statements by an accused constitute hearsay and are inadmissible. See People v. Reynoso, 73 N.Y.2d 816, 819, 537 N.Y.S.2d 113 (1988) (upholding exclusion of "inadmissible self-serving hearsay"); People v. Vega, 276 A.D.2d 349, 349, 714 N.Y.S.2d 438 (1st Dep't 2000) (excluding defendant's statements to police as "self-serving hearsay"); People v. Collins, 277 A.D.2d 1021, 1021, 715 N.Y.S.2d 348 (4th Dep't 2000) (trial court properly excluded evidence of self-serving statements made by defendant during an interview preceding his polygraph examination); People v. Brown, 159 A.D.2d 956, 956, 552 N.Y.S.2d 784 (4th Dep't 1990) (trial court properly rejected evidence of defendant's written statement made to police which was "not contrary to defendant's penal interest").

In his reply papers, petitioner argues for the first time that his statement was an "excited utterance" and should have been admissible as an exception to the hearsay rule. Notably, that argument was never made to the trial court when it sustained the hearsay objection nor was it made on appeal; it is thus unexhausted and procedurally barred. See DiGuglielmo v. Smith, 366 F.3d 130, 135 (2d Cir. 2004) (claims is "deemed exhausted" where a petitioner failed to exhaust in state court but can no longer obtain review of that claim because he has procedurally defaulted) (citing Harris v. Reed, 489 U.S. 255, 263 n.9, 109 S. Ct. 1038, (1989)); Jimenez v. Walker, 458 F.3d 130, 148-49 (2d Cir. 2006).

9

In any event, it is highly unlikely that the trial judge would have admitted petitioner's statement as an excited utterance. Under both New York and federal law, among the factors to be considered in determining whether the excited utterance exception applies is the absence of time for reflection and the potential influence of self interest. See U.S. v. Delvi, 275 F. Supp. 2d 412, 414-16 (S.D.N.Y. 2003); People v. Vasquez, 88 N.Y.2d 561, 579, 647 N.Y.S.2d 697 (1996) (quoting People v. Brown, 70 N.Y.2d 513, 518, 522 N.Y.S.2d 837, 517 N.E.2d 515, 517 (1987). Petitioner may have hoped he would escape through the car chase, but he had more than sufficient time to think of a story in case the police apprehended him. If petitioner were truly reacting to the natural "shock" of an "extraordinarily startling event" he would have made this statement as soon as the high speed chase came to a crashing halt. Instead, he sat there and said nothing when the officers approached. To the extent the statement actually was exculpatory, it was squarely in petitioner's self-interest to make it.

Petitioner's argument that the prosecution opened the door by soliciting the fact that a statement was made presents a modestly closer question, but given the broad discretion afforded the trial judge under state law, see People v. Walker, 83 N.Y.2d 455, 462, 611 N.Y.S.2d 118 (1994) (noting the general rule that "the nature and extent of cross-examination are matters that are entrusted to the sound discretion of the trial court"), there was no error. The trial judge was within his discretion in concluding that the jury would not infer that petitioner had made an inculpatory statement instead of a self-serving one; the brief reference to the statement in answer to the prosecutor's compound question, followed by the prosecutor quickly moving on to something else, made it unlikely that the jury would speculate as to the statement in a way that might have prejudiced petitioner.

The trial court's decision to sustain the prosecutor's objection certainly does not rise to the level of a Due Process Clause violation, because the excluded evidence would not have created "a reasonable doubt that did not otherwise exist." Justice v. Hoke, 90 F.3d 43, 47 (2d Cir. 1996). This is particularly so given that the jury might well have construed the statement as an admission by petitioner that he took the shots, coupled with a weak effort at asserting justification – a theory that would have been fundamentally at odds with petitioner's theory at trial of mistaken identity.

Since petitioner was caught practically red-handed in the identified vehicle with the gun and ammunition used in the shooting, his self-serving, at best arguably exculpatory declaration would not have changed the result. See, e.g., Zarvela v. Artuz, 364 F.3d 415, 418 (2d Cir. 2004) (no constitutional error in precluding unreliable hearsay testimony from a witness when it was found that the speaker of the hearsay statements may have had a motive to fabricate statements to the witness); Sampson v. Conway, 386 F. Supp. 2d 173, 181 (W.D.N.Y. 2005) (habeas relief denied where trial court admitted inculpatory post-arrest statement but excluded pre-arrest exculpatory statement, since they were made at different times and the latter was self-serving hearsay).

## CONCLUSION

The petition is denied and the case is dismissed. Petitioner has failed to make a substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability shall not issue. 28 U.S.C. § 2253. Further, this Court certifies pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. See Coppedge v. United

States, 369 U.S. 438, 444-45, 82 S. Ct. 917 (1962). The Clerk of the Court is directed to enter judgment and mail a copy of this Order to petitioner *pro se*.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
       January 7, 2011